Robol Law Office v. Collette-Davison My name is Rick Robol. This morning I have the privilege of representing the appellants in this matter in an appeal from a 12B6 dismissal of a statement of interest, a right in claim under the Federal Supplemental Admiralty Rules. The order dismissing the claim was entered less than three weeks after the motion to dismiss had been filed. There are three independent grounds for reversing the decision below. Before analyzing those grounds, I'd like to submit one overall observation. That overall observation goes to the nature of the standard under the pertinent Supplemental Admiralty Rule, which is Admiralty Rule CA62. And it simply requires a description of the interest in the property that supports the person's demand for its restitution or right to defend the action. Preliminary question before we get too deep into this. You represented the solvers throughout this business in obtaining salvage. And now you're representing yourself to compete with your clients for some of the salvage award. Is there an inherent conflict of interest that should bar this? I mean, it's a strange structure in this case that you're now competing with your clients, who you represented over all these years in getting salvage and helping them bring the ship up and all the other functions. And you incurred legal fees, and you haven't been paid your legal fees. And in connection with your legal fee dispute, now you are claiming you are a competing solver entitled to a competing award. How can you do that? Well, Your Honor, actually, the claim is not that I'm a competing solver. The claim is that I am a solver who assisted in the solver that was undertaken by Recovery Limited Partnership. You were a lawyer representing the solvers, and you had incurred attorney's fees. And now you're trying to seek a part of the award itself that belonged to your clients through salvage because you did your attorney's work. I don't understand the whole structure of the case and the conflict that you find yourself in. Well, Your Honor, the nature of the claim was a claim based on the right to possession under Ohio law. You're claiming a salvage interest. You're claiming part of the award. You're not suing them. You could be attaching their award, but that's a totally different function. You're in admiralty seeking salvage award from the ship, and that's exactly what you represented them to do to achieve. And so it seems to me there might be a fundamental disqualification in your position here in helping them get a salvage award and then coming in and trying to take it away from them. Well, let me see if I can address that because the salvage award that you're referring to, there were several phases that took place in this case. And I think the salvage award that Your Honor is referring to is a claim which was made in the complaint that was filed in April of 2013. I was not representing them at that time. I had previously represented Recovery Limited Partnership for a very brief time in 1987. I had also represented Columbus America Discovery Group for a period of time at various times, and I had actually moved to withdraw from representation, and the Eastern District of Virginia had not permitted me to do that. But I think as Your Honor observes, it's important to understand that this is an in rem matter. This is not a claim against the receiver. It is a claim against the race. And parties who assist in salvage are not necessarily competitors of parties who have completed the salvage. Rule C and the general admiralty rules of salvage recognize that there may be multiple parties who contribute to a salvage. You're not a party. You are an attorney for the salvage. You were. And now you're not. And you were owed a fee, and now you're trying to use this method to collect your fee. And I just find it difficult. Well, Your Honor, I think it's conceptually different because my claim is based on the right, in this case, is based on the right to possession under Ohio law. That is a. . . You never begin an award. You have possession of some documents, which is confusing the issue. You had a possessory lend, if it's still recognized, and that's not altogether clear, even under Ohio law. But you had a possessory lend of your client's papers. Most states, I think, don't let you exercise that. You have to turn them back over to the client, and you don't have a right to sell that property. It's just an exertional. . . It's something to force somebody to pay you what they owe you. But that doesn't have anything to do with the salvage. You were hired by the client to obtain salvage and to obtain an award, and you got an award. And I don't know if they're still doing salvage operations now, but . . . Your Honor, may I? You should just sue the client if you want to sue the client. Attorneys sometimes do sue their clients for fees. And if you get a judgment, then you can execute against the assets of the client. If you find assets. But to go after the . . . to compete for the salvage award, I think is inherently a conflict. Well, Your Honor, I don't think that was addressed in the decision below. It's not addressed anywhere. It struck me as I'm reading your papers and the papers in the case, and I'm saying an attorney here is coming before us and seeking salvage with respect to a ship that he represented the salvage in getting salvage. And in that sense, he's competing with his client. You can't represent a client in buying a building and then withdraw from that effort and go out and bid yourself for the building. But, Your Honor, I think we're getting confused. This is the whole reason why there are restrictions and procedures on how you deal with a 12B6 motion. This is why there are requirements that you have . . . We understand the 12B6. Right. We understand the pleading requirements and so forth. Okay. What I'm talking about is something more fundamental. I'm trying to figure out what you're trying to do. Right. To address . . . You're trying to obtain a salvage award. That's what you're trying to obtain, right? Correct. Your Honor, in order to address that, I have to talk in some detail about certain assumptions that are implicit in your question that are incorrect. And the reason those assumptions are incorrect is because we don't have a fully developed evidentiary record. If I may speak to those, and I'm going to be loathe about getting outside of the record that the court has before it, but because of the way you've raised it, I think I have to go into a little bit of detail, at least, in addressing that. First, the basis for the claim is not merely documents. On its face, the claim states that it includes providing assistance in obtaining photography and video. Did you do that as an attorney? No, Your Honor. I did not. No. That is incorrect. Were you a joint enterprise? Did you, when all the initial actions that you were in with them, did you have a joint venture interest in the salvage? No, Your Honor. But let me be very clear about this. I did not provide the assistance that Your Honor is referring to and that's referred to in the claim with respect to obtaining the video footage and with respect to providing oral information as an attorney. I was doing it when I was not an attorney. Excuse me. I'm sorry, Your Honor. Okay. I was not understanding you to answer his question, which I thought was interesting as well. Yeah. May I?  You finish. No. Just tell me about your initial involvement with them. Well, my initial involvement goes back to 1986, Your Honor, and I represented initially Recovery Limited Partnership, which is an Ohio limited partnership. Weren't you representing KADG? Wasn't it in that capacity that you obtained the information which was later provided to RLP? Not entirely. Again, this is the problem with the lack of an evidentiary record. Some of the materials were obtained in my capacity as an attorney. Let me just see if I can clarify this because my time is running out. Number one, some of the assistance that was given was oral assistance, not as an attorney. I met with the receiver. I wasn't representing Columbus American Discovery Group. A receiver was appointed. I met with him to reach out to him to see what I could do as a human being to try to assist. Talked to him. Gave him the benefit of my words. That's inconsistent with the record. The trustee demanded these papers and materials back, and you said, I have a possessory interest in them, and he said, I'm going to preserve your possessory claim, but give me the papers, and you did. Now tell me why that's wrong. Well, it's wrong because you're overlooking the fact that it was not a matter of simply providing papers. I met with the receiver to give him the benefit of my information and advice, my insights. I wasn't representing the receiver. I wasn't representing RLP. I wasn't representing CADG at the time. I did this to try to help out. I spent over a hundred of them. He made his demand for everything back, didn't he? I think it was. I don't recall, Your Honor, but I don't know that the record reflects that. But it didn't have anything to do with providing papers or providing records. That's what your claim is. You have in the record, you talk about maps, photographs, documents, papers, and that's all the executor wanted back. Your Honor, actually the claim is a little broader than that. If I might invite Your Honor's attention to page 70 of the appendix. It states, among other things, assistance in providing and obtaining site photography and video footage, information, and other materials and services. So it's not limited, Your Honor, to materials. So that's the first problem with trying to address this on the basis of an incomplete record. The second problem is that some of these materials were materials that I had a right to, not as a lawyer. Some of them had not been given to me in my capacity as a lawyer. Some of them were because certain real estate that I owned was being leased to the client. So, you know, when we apply the standards of the Coleman Industries case and various other cases, the problem is that the district court did not apply the standard of taking the allegations of the complaint, or the claim is true, and applying the inferences that could be drawn properly from those factual allegations. As to the issue of the conflict, Your Honor, I don't think that there is any kind of conflict. Since this is raised for the first time, I know this is highly irregular, but I'd like a chance to brief it because I don't think a serious matter like a conflict of interest of this sort should be decided on the basis of, you know, kind of a scramble for the football sort of question. I don't see any kind of conflict, again, because the assistance that was provided was assistance that was in support of the receiver. In fact, the evidentiary record, to the extent that there was one, included... When were the videos and the maps created? They were in the possession of Milton Butterworth, and I don't know the exact timeframe, Your Honor, but I think it was probably in the 1980s, probably late 1980s and 1990s. The period during which you were representing all these solvers? No, Your Honor, I was representing Columbus America Discovery Group during that period. There was an issue... Were they a solver? Yes, that's right. They were a solver. It would help, you know, if we could just have straightforward answers. Sure, sure, sure. I thought you said I was representing all of these solvers. I was not representing ROP at that time. Were there other solvers? There were various other solvers as well, correct, Your Honor. How many people were awarded salvage rights in the ship? Well, there were two different groups, one being an agent for the other, according to the determination of the district court. That's just one, then. In other words, you usually only have one solver, and the solver is awarded possession of the ship for purposes of salvage, and the court, after the salvage is done, can give an award. May I answer that? My time's up. Typically, Your Honor, there is typically one solver in possession. There are cases where there have been more than one solver in possession. Sure, there could be, but that would have to be clear. You just made a statement that you represented one solver and that they're implying that there were others, but it turns out there weren't any others. There was one solver awarded in this case, right? I don't agree with that, Your Honor. Columbus America Discovery Group is a distinct legal entity from Recovery Limited Partnership. It wasn't until the determination of the district court in its July 1914 opinion that CADG was at all times acting as an agent for RLP that it was even clear that there was an agency during that period of time. Remember, what we're dealing with is – and cut me off if I'm going on too – I apologize if I'm going on too long here. Give me one more minute. Okay. What we're dealing with here is items that were recovered during the 2014 salvage season. We're not dealing with salvage that was obtained during the period of the 1980s and 1990s. We're dealing with a very specific salvage issue that arose in 2014 when I was not representing the salve board. And to answer your question, Your Honor's question about how salvage law works, there are numerous cases where numerous awards are made to different individuals and companies who contribute to a salvage. I understand that. Okay. And you have some rebuttal time reserved. I think so, yeah. All right. Thank you, Your Honor. That please the court. My name is Conrad Shumidan, and it's my pleasure today to represent Recovery Limited Partnership in this case. And I think the court has focused on the issue. This is a case where an attorney is seeking to utilize a salvage lien to make a claim not only for an attorney's fee, where he's asserted a claim in the receivership proceeding, but to claim that he is also entitled to a salvage award by giving back to the client the property of the client, which he obtained in the course of the legal representation of the client. And Judge Smith found, and I think the record is plain that she was correct, that there were any number of, well, she found a number of reasons why that was inappropriate, and there are any number of reasons why she should be affirmed. We begin with the rule that as a Virginia lawyer practicing in a Virginia court, in a Virginia proceeding, licensed in Virginia, Mr. Roble is subject to the rules of the Virginia Code of Professional Responsibility. That code provides unequivocally that a lawyer has an obligation to return to the client any property obtained in the course of the legal representation. There are no ifs, ands, or buts, no exceptions. There is no basis for saying that any rule, that Judge Smith was in any way incorrect in ruling that Mr. Roble in Virginia, practicing in a Virginia court as a Virginia lawyer, was subject to the Virginia Code of Professional Responsibility. I pause for a moment because I hope you will, I hope we can end it on that regard because I think my district judges that I practiced before think it's very, very important that lawyers who practice before them be responsible to that code of professional responsibility, which they place not only on their local counsel, but on those who practice Pro Hoc Vici. I think it is right and appropriate to do so. I respectfully urge the court that on that basis alone, the court should affirm this award of what Judge Smith did. In addition, Judge Smith examined the law of agency, and she determined that an agent had to return the property of the principal. CADG was always the agent of ROP. The record is plain that Mr. Roble was representing at the time RLP and CADG in the proceeding out of which the salvage operation occurred. We attach bills there in the appendix. In fact, RLP did not, I mean, CLDG, CADG did not exist at the beginning. It was created because under Ohio law, the partners could be identified, and they didn't want to identify all the partners and have people start soliciting them if they were successful, so they created this corporation. But at all times, the corporation was the agent. We respectfully suggest that under Ohio law, the result would not be any different. The cases in Ohio make it plain that the client comes first. Modern ethics jurisprudence correctly places the interest of the client ahead of the interest of the attorney. I have a question whether there are any circumstances where an attorney's retaining lien could be utilized in a situation where the attorney was telling the client, I'm going to place my interest ahead of yours. I'm not going to give you something I got for you and promised to get for me for you in the course of a legal representation. I'm going to stick it to you unless you pay me. I respectfully say that's strong, but I respectfully say that's part of our ethical code. That's something we as lawyers are proud of. We ought to be proud of it. This sounds like it almost seems self-evident, and so it may be so self-evident that it's not in the record. The fact of Mr. Roball's representation is established in the record, and the relevant time frames and entities. And you're nodding your head. I think, yes, it's fine. But is it plain in the sense that you can point to evidence of that in the record, or is that the assumption that everyone is proceeding on based on the history of this litigation? No. If I can answer your question. If I don't answer it, come back to me. I have to do that. No, no. I want you to. At all times, he remained counsel in this case. You cannot get out of a case in the Eastern District of Virginia without permission of the court. When he came back in, he moved to get out of the case. It was only in connection with Judge Smith allowing him out of the case, which I think occurred in 2014, that he discontinued his role as a participant in this case. Even though the case had closed for a period of time, he still remained a lawyer, as you do in the Eastern District. Once you come into the Eastern District, you are a lawyer. You stay there until the court lets you go. And so he was at all times. We established in the record that ROP retained him. It is perfectly obvious, by the way, when you look at the fact that this is a law firm and a lawyer making a claim, that law firms and lawyers do not have expertise in salvage. They do not go out and go under the water. The only thing he could possibly have were things that were obtained in connection with his legal representation. Now, he went on further, though. If you assert a retaining lien, you are making certain representations by the very act of asserting a retaining lien. You're saying, I acquired this in the course of legal representation. So he is by asserting the lien. Now, we then get to a couple of other points that I think are significant. If Mr. Robel had a lien, which I strongly deny respectfully, a lien waiver is not a salvage claim. It may be something else, but it is not a salvage claim. He may have had a possessory element, but the possessory element did not give him the right to sell the property, did not give him the right to do anything but hold it. Then we come to another point that I'd like to call the Court's attention to, and Judge Niemeyer pointed it out, and it's, I think, very significant. And I always thought it was dispositive, even though Judge Smith did not rely upon it. She's wiser than I, but we argued it very strongly. This is a receivership. A receivership is a creation of a court order. We attach the court order in this receivership, but every receivership starts out with a court order that demands that everybody that has property of the person or entity placed into receivership give the property to the receiver. I remember years ago when I was young and very naive, I'm old, still probably naive, I was representing someone who did not like a receivership order. We thought it was most unwise, and I asked my senior partner, well, what happens if we don't comply? He looked over at me and said, well, you could go to jail, and we decided at that point in time that even someone like me learned something. Cooperating with a receiver pursuant to a court order is not a voluntary act. It just plain isn't, and it is necessary in order to have a salvage award that the act be voluntary. There was nothing voluntary on page 2. The question is how can an attorney who acquires information and useful information during the course of legal representation of the salvor come back and say, when I turn that material back over to the estate, I'm now providing salvage help. I mean, he's an attorney. He's providing salvage help from the beginning, but he's doing so as an attorney. That's correct, Your Honor. I couldn't agree more. I would state it even stronger than the court has stated it. I don't know. The only difference I would have in your phraseology, and I always let you, you're wiser than I am, but I don't know that an attorney performs salvage work when he represents a salvor. I think he's performing attorney work for which he earns an attorney's fee. I'm not being misconstrued as saying he performed salvage work. He represented the salvor. He represented that. But I prefer respectfully that we emphasize that what he was doing was representing the salvor. And at page 131 of the appendix, you'll find in his answer he admits that the salvage was completed during the time of his representation. In other words, he has admitted in his pleadings that all of the information necessary to find the wreck and everything had been developed at the time of the original proceeding when he was counsel. And he is now saying, if I give any of that information to the receiver, even pursuant to a court order, I am entitled to a salvage award in addition to the award for attorney's fees where I've made a claim in Ohio. The salvage has been reasonably successful. There are assets in Ohio, if he can prove an attorney's fee lien. That lien is not before the admiralty court. It cannot be brought before the admiralty court. And what he's saying is, in addition to being counsel, simply by giving back to the client, the receiver, pursuant to a valid order from the Court of Common Pleas of Franklin County, Ohio, I get a salvage award. And I get a salvage award because you agreed that you would say I did not waive the processory element of my attorney's fee, of whatever attorney's retaining lien I had. We're not saying he waived the processory element of that lien. We're saying even if he waived the lien, it's not salvage, and he had an absolute obligation to give back the property. He has also thrown up another red herring. He says, well, maybe I didn't get it as an attorney. Maybe I got it in some way as a landlord. But in no way does he plead how he could have gotten the property as a landlord. His tenant was not RLP. It was another entity. The lease is in the appendix. And first of all, he doesn't get the right to claim that he can steal the property of his tenant. He can't. Which is also his client. Which is also his client. You can't. There is, respectfully, a somewhat offensive element in this to the extent that he's saying, well, I'm dealing with my client, but I'm taking their property, and I have a right to it. I don't back away from saying, I think that's an important element that has to be dealt with by the court. But he is, in some way, saying abandonment. Well, abandonment requires a knowing, even if you could abandon it, which I find to be respectfully farcical. You have to have some knowing element. They are engaged in five years of litigation to get the right to salvage. They're acknowledging that the right of sovereign possession is the most valuable asset of RLP. The very notion that he'd come in and say, oh, I thought my client was abandoning information that was their most important asset is perfectly absurd. And plus, he has no element, no allegation of any kind of due process or anything else. I just get to take my client's property. You don't get to take, respectfully, you don't get to take tenants' property. And you certainly don't get to take the property of others who give property to the tenants. And if you're going to do it, you have to allege it. Rule C-6 of the Admiralty Rules requires a verified claim. And the reason it requires a verified claim, as the court knows far better than I, is they want you to specify the basis under which you're claiming a salvage award so that it can be evaluated. You can't just set forth elements. A verified claim requires something more. But under Twombly and Igbal and the holdings of this court, which I'm not going to repeat but you're more familiar with than I, you've got to have something that rises to the level of plausibility, something that says, I can understand how this happened. This pleading, plainly, does not meet those standards. Let me sort of summarize, and then I'm going to answer any question anybody has. But if you find, respectfully, that Mr. Robel is subject to the Code of Ethics of the Commonwealth of Virginia, which I respectfully think he is, and if you find that the Eastman District has the right to make its attorneys meet that standard, and I really urge you to find that, this case ends, that ends it. Well, it looks like, even hard-looking, Ohio law may not entitle you to keep a client's property in a dispute over fees. That's correct, Your Honor. It's an old-fashioned notion. It was leverage in order to get the fee, but you never had the right to sell the property. It's still your client's property. Couldn't agree with you more. I would be stronger than Your Honor. We submit that Ohio law does not allow the retention of property in a situation where the client's interest is at stake. We respectfully submit that. And even if you find Ohio law applies in their Code of Professional Responsibility, that ends it. You end it on that. If you agree with Judge Smith that under agency law, as she found, an agent is required to return the property of his principal, that ends it. That's all you've got to do. If you agree that a receivership order is valid and that someone who complies with a receivership order is not engaged in a voluntary act, I think that's clear. That ends it. An act to be salvaged must, I'm being firm, but I think I can stand for this, it must as a matter of law be voluntary, complying with orders of courts. We do it. If you order me to do something, I will do it with a smile. It will be voluntary, but it is not a voluntary act. We do it whether we agree with it or not, and it's important to the law that we recognize that you do it whether you agree with the law or not. Judge Smith was correct in this case in holding that the claim here had no basis, that the ethical rules that she believed in and applies in her court and has applied in the entire eastern districts were appropriate. She enforced those ethical rules. If you don't do that, the other grounds that I've stated today plainly and unequivocally, each independently and separately, justify dismissing this claim. I respectfully submit to the court that there's no basis under the law for an attorney to try to take the property of his client and convert it into an additional benefit to himself. Attorneys exist to serve the client in the legal system, and that service does not include grabbing their property. If you have no further questions, I will end my argument. Thank you. Mr. Roble. May it please the Court. Well, let me see what I can do to address the issues that have been raised. You know, I think this is a good indication of why there are pleading requirements, why there is an orderly procedure under the Federal Rules of Civil Procedure, and including under Civil Rule D and Civil Rule 56, because we're getting into making all sorts of assumptions that are just false. Did you serve in a legal group? Did you represent the original salvor or an original salvor in possession? Oh, yes, Your Honor, I did. I represented Columbus America Discovery Group during the late 1980s and 1990s. And then in 2014, RLP became the salvor in possession? Correct. You represented RLP, too, you said. Early in 1986, I represented them, Your Honor. You represented them both. In response to Judge Duncan's question, you represented, according to your affidavit, CADG and RLP. I'm reading it here, page 1. Right, at various times. But I did not represent them both. I didn't represent either one at all times. So what assumptions are we making about your responsibilities as an attorney in a relationship with RLP and CADG? Well, there are a couple. The first assumption is that the assistance that was provided, that is the basis of the claim under Rule CA-6, is materials as to which I'm claiming an attorney's lien. Some of those are such materials. However, there was other assistance that was provided. I provided voluntarily. I went to the receiver after the receiver was appointed. That's the distinction that you're making, that the materials that you are you arguing that the turning over of the materials to the receiver was voluntary? Well, that's part of it. And outside the scope of your representative relationship? Well, first, let me be clear. That's not the point I'm making, Your Honor. It's the question I'm asking. Okay. It was voluntary, correct. Both the materials that you turned over to the receiver, that was voluntary. Correct. But you're also saying that the other part, the part that you're saying does not fall within the attorney-client privilege, is your proffer, your in-person proffer to the receiver. It wasn't a proffer, Your Honor. It was I went to a third party who had materials. They were not materials I had. A third party had materials. Well, then they're not client materials. In other words, you're claiming a lien in the materials of your client based on your representation. No, Your Honor, no. That's the only way you get a lien. No, Your Honor, no. No, that's not what I'm claiming. I'm claiming there are several elements. What I'm talking about right now is I went to a third party who had materials and I went to them. That is the materials that the trustee asked you to or demanded that you turn over. You claimed to have a possessory lien based on your representation. Correct. That is client property, right? Correct. And that was mandated by order to be turned over. Well, the initial order, yes. However, I filed a notice of a lien, which was not disputed, and then I met with the receiver. Your answer is yes. No. With respect to what you just said, that there were materials you turned over that resulted from your representation of originally, at least initially, CADG, right? Correct. Okay, so that's at least a major category of material that we're talking about here. That's one of the categories, correct. You're also saying that there is some as yet undefined other category of stuff that you tried to obtain. Can you quantify that at all? Yeah, it was voluminous footage of the bottom that was in the hands of a third party. The third party claimed that he was the owner of the material, and I went to him and convinced him to give it to the receiver to allow the receiver to receive it. Is that the same order? No, no, no. Wouldn't the receiver also have been able to obtain that information by order? I don't think so. Isn't that what receivers do? Well, if it belongs to the company, yes, but not if it belongs to a third party. The third party claimed that this was his property, that it was his intellectual property. Again, we're getting in a complicated area because there were intellectual property agreements as to who held what property when, when those expired. None of that is in the record. I appreciate that, which is why I was just trying to make sure I understood what material was covered by the attorney-client relationship. Correct, and this was not covered. This was outside the attorney-client relationship. What I'm talking about is going to a third party to assist the receiver. This third party had crucial information, and I went to obtain that. As to the rest of the arguments, my time is up. Who was the third party? Milton Butterworth. And when did he develop that footage? I think he processed it during the period from 88 to the late 1990s. I don't have all the details on that. Did he ever turn that over to the salvor during that time? Well, he turned it over after. No, he turned it over to the salvor after I went to him. And when? That was 2013, summer of 2013. Where was the footage in 1988 to the 1990s? In South Carolina, Charleston, South Carolina. Who had a section of it? Mr. Butterworth. Could I just ask one more question, please? Yes. Had your legal relationship ended at the time that you went to this third party? Yes, the legal relationship had ended. You had been allowed to terminate your legal representation by the court at this time? Well, let me be clear. Okay, now, I was still counsel of record in the Eastern District of Virginia. And that case was closed. Thank you. Yeah. I'm sorry. My time is up, but I'm going to have to refer the court to the briefs because I think the briefs address all these other issues. And I would, again, orally move for a leave to submit a supplemental brief on the issue that Your Honor has raised, Judge Niemeyer, because it's an issue that goes, I think, to an ethical dilemma. Well, we would not refer it to any other group or association without giving you that opportunity if we were to decide that way. All right. Thank you, Your Honor. We'll adjourn court signing die and then come down and greet counsel. This honorable court stands adjourned. Sine die. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Allyson K. Duncan, Stephanie D. Thacker